IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| SKYLER GRIEBEL,<br><br>          Petitioner,<br><br>    vs.<br><br>JIM SALMONSEN, Warden of the<br>Montana State Prison, and AUSTIN<br>KNUDSEN, Attorney General of the<br>State of Montana,<br><br>        Respondents. | Cause No. CV 21-20-H-DWM<br><br><br><br>ORDER |

This matter comes before the Court on a petition filed by pro se state prisoner Skyler Griebel seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  *Id.* If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order."

1

*Id*.  As explained below, Mr. Griebel's petition will be denied.

## I.     Motion to Proceed in Forma Pauperis

Mr. Griebel seeks leave of the Court to proceed in forma pauperis and has provided a copy of his Inmate Trust Account Statement.  See, (Docs. 6 & 6-1.) After reviewing the motion and supporting account statement, the Court finds Griebel has sufficiently shown he cannot afford to pay all costs that may be associated with this action. The motion to proceed in forma pauperis will be granted.

## II.     Background

On November 30, 2016, Griebel was committed to the Montana Department of Corrections ("DOC") for five-years based upon a conviction of Criminal Possession of Dangerous Drugs handed down in Montana's Eighteenth Judicial District, Gallatin County.  (Doc. 1-1 at 2.)[1]  On September 29, 2017, Griebel was placed in the community on Conditional Release.  On December 11, 2017, Griebel's Conditional Release was revoked based upon a new felony charge of Partner Family Member Assault.  *Id*.  On April 9, 2019, Griebel was released from the Montana State Prison and placed in the Intensive Supervision Program.  *Id*.

On April 29, 2020, Griebel was arrested by the Bozeman Police Department

---

[1] See also, Montana Correctional Offender Network:
https://app.mt.gov/conweb/Offender/3007513/ (accessed August 6, 2021).

and incarcerated at the Gallatin County Detention Center based upon a Probation and Parole ("P&P") hold.  On May 1, 2020, Griebel's probation officer, Officer Michel, attempted to meet with Griebel at the Detention Center in order to serve him with a copy of his Notice/Waiver of On-Site Hearing and On-Site Affidavit of Probable Cause.  *Id*.  Griebel became agitated during the meeting, began slamming his hand and telephone against the glass dividing them, and called Officer Michel a profane name.  *Id*.  Officer Michel ended the meeting.  *Id*. at 2-3.

On May 4, 2020, a preliminary on-site hearing was held.  Based upon Griebel's disruptive behavior three days earlier with Officer Michel, Griebel was excluded from the on-site hearing.  *Id*. at 3.  At the conclusion of the hearing, it was determined that probable cause existed to believe Griebel had violated his parole conditions.  *Id*.

On July 17, 2020, a formal parole revocation hearing was held; the Montana Board of Pardons and Parole ("the Board") found Griebel guilty of violating his parole and imposed a 120-day sanction.  *Id*.  Griebel then filed a motion for release which the district court construed as a petition for a writ of habeas corpus. *Id*. at 1, f.n. 1.  The Department of Corrections, in conjunction with the Bozeman P&P office and the Chair of the Board, determined there were procedural irregularities during Griebel's on-site hearing.  Specifically, the State conceded that Griebel should not have been excluded from the preliminary on-site hearing

and, accordingly, he was not provided the process he was due at the May 4, 2020, hearing.  *Id*. at 4.  The order revoking Griebel's parole was vacated by the Board on July 17, 2020.  *Id*. and 4, 7.

On October 12, 2020, Griebel was arrested for misdemeanor Obstructing and Unlawful Restraint and appeared before the Park County Justice Court.  *Id*. at 5; see also, (Doc. 1 at 3, ⏀ 3.)  Griebel also acknowledges that he committed a contemporaneous parole compliance violation based upon his alcohol and drug use.  See e.g., *Griebel v. Gootkin*, OP 21-0064, 2021 WL 716416, at *1 (Mont. Feb. 23, 2021).  Griebel did not have an on-site preliminary hearing.  On December 11, 2020, Griebel appeared before the Board; his parole was revoked. (Doc. 1-1 at 6); see also, (Doc. 1 at 3, ⏀ 3.)

Griebel filed a petition for a writ of habeas corpus with the Montana Supreme Court alleging that the Board erred in revoking his parole, resulting in an illegal sentence and constitutional violations.  See, *Griebel*, OP 21-0064, at *1. Specifically, Griebel argued the Board and the DOC lacked probably cause and that the length of his confinement is excessive.  *Id*.  Relying upon *Morrisey v Brewer*, 408 U.S. 471 (1972), Griebel argued the Board and the DOC violated 14th and 5th Amendments to the United States Constitution and that the Board did not give deference to its own administrative rules which required a preliminary on-site hearing.  *Id*.

4

In relation to this argument, the Montana Supreme Court held:

Griebel asserts that the administrative rule should apply to him instead of the statute. Admin. R. M. 20.25.801(3) (2016) states:

> No on-site hearing is necessary if the parolee is convicted of a felony offense during the period of supervision, or if the parolee is arrested in a state in which the parolee has no permission to travel or reside.

He is incorrect in his assertion. Montana's statute for supervision of parolees applies and controls instead of the administrative rule. Section 46-23-1024(1), MCA, lists the exceptions for an initial hearing after an arrest:

(1) After the arrest of the parolee, an initial hearing must be held unless:
(a) the hearing is waived by the parolee;
(b) *the parolee has been charged in any court with a violation of the law*; or
(c) the probation and parole officer authorizes release or initiates an intervention hearing under subsection (4).

Section 46-23-1024(1)(b), MCA (emphasis added). "[A] statute controls over an administrative rule, at least to the extent of any inconsistency or conflict." *Williamson v. Mont. PSC*, 2012 MT 32, ¶ 16, 364 Mont. 128, 272 P.3d 71 (citing *Haney v. Mahoney*, 2001 MT 201, ¶ 6, 306 Mont. 288, 32 P.3d 1254).

Griebel was charged in a court with two misdemeanors. He was not due an initial or on-site hearing. Because he had no hearing, Griebel did not have to be served a report of violation. Admin. R. M. 20.25.801(4) (2016). No other notice was due Griebel because of his arrest. *See* § 46-23-1023(1), MCA.

*Id*. at 1-2.

The Court found Griebel's other assertions lacking in merit and concluded Griebel was not entitled to an on-site hearing and that probable cause for revocation existed. *Id*. at 2. Griebel had two noncompliance violations, specifically criminal offenses, as defined by 46-23-102(4)(a)(iv) MCA,

accordingly, under state law, a parole officer had the ability to initiate a petition for revocation. *Id.,* (citing 46-23-1025, MCA).  Because Griebel failed to show an illegal parole revocation occurred in violation of his right to due process, Griebel was not entitled to habeas corpus relief. *Id.*  The petition was denied and dismissed.

### III.    Griebel's Allegations

Griebel generally alleges the DOC, the Board, and the Bozeman Parole Division have violated his rights under the Fifth and Fourteenth Amendments, making his current detention illegal.  (Doc. 1 at 2, ⁋ 1.)  Specifically, he asserts: (1) he was denied a preliminary onsite hearing to establish probable cause in violation of *Morrisey v Brewer*, 408 U.S. 471 (1972), (Doc. 1 at 4, ⁋ 13(A)); see also, (Doc. 1-1 at 5-9); (2) the duration of his confinement is "excessive and erroneous," (Doc. 1 at 5, ⁋ 13(B)); (3) the Montana Supreme Court should have given deference to the applicable Administrative rules because the statute at issue, Mont Code Ann. § 46-23-1024(1), is silent and ambiguous,  (Doc. 1-1 at 10-14); and, (4) the Board violated his Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), when he was forced to enter a plea during his December 11, 2020, revocation hearing. *Id*. at 15-16.

Mr. Griebel asks this Court to release him back to his previous parole status and vacate his parole violations for lack of due process.  He also requests a

permanent injunction be issued, under *Morrisey*, to protect the Fourteenth Amendment Due Process rights of future parolees.  (Doc. 1 at 7, ¶ 17.)

## IV.    Analysis

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a habeas corpus application "with respect to any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). See, *Knowles v. Mirzayance,* 556 U.S. 111, 114 (2009).  As explained below, the Montana Supreme Court reasonably applied *Morrisey* to Griebel's case.  Accordingly, his first claim does not survive AEDPA review.

Although Griebel's three remaining claims may be barred on procedural grounds, it is clear he is not entitled to relief on the merits of his claims. Accordingly, it is more efficient to proceed to the merits.  See, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997).

//

**A. Denial of Preliminary Probable Cause Hearing**

In *Morrissey v. Brewer,* 408 U.S. 471 (1972), the United States Supreme

Court held that, although parolees enjoy only "conditional liberty," termination of

that liberty constitutes a "grievous loss" requiring "some orderly process." *Id.* at

495.  However, "the revocation of parole is not part of a criminal prosecution and

thus the full panoply of rights due a defendant in such a proceeding does not apply

to parole revocations."  *Id*. at 480.  The Court determined the process that is due to

an individual facing parole revocation includes "two hearings, one a preliminary

hearing at the time of his arrest and detention to determine whether there is

probable cause to believe that he has committed a violation of his parole, and the

other a somewhat more comprehensive hearing prior to the making of the final

revocation decision." *Gagnon v. Scarpelli,* 411 U.S. 778, 781–782 (1973) (*citing*

*Morrissey,* 408 U.S. 471). But *Morrissey* also explains that the requirements of due

process are flexible and "not all situations calling for procedural safeguards call for

the same kind of procedure." *Morrissey,* 408 U.S. at 481. Additionally, while

*Morrissey* and *Gagnon* require a probable cause determination before probation is

revoked, the individual states may implement different procedures and still satisfy

due process. See generally, *id.* at 481, 485, 487; *Gagnon,* 411 U.S. at 782.

Before this Court, Griebel points to the fact that he was not allowed to be

present at his May 4, 2020, preliminary hearing, a decision which the Board later

determined warranted dismissal of the order revoking his parole.  Griebel then
analogizes the subsequent denial of a preliminary hearing following his October
2020 arrest to his exclusion from the May hearing and asserts the present
revocation of parole should also be deemed unlawful.  But, the two situations are
distinct.  The fact that Griebel might have received a favorable outcome when the
state prevented him from participating in his May 2020 preliminary hearing, does
not mean that the decision not to hold a preliminary hearing following his Park
County arrest makes his present revocation illegal.

Moreover, the decision not to hold a preliminary hearing was made pursuant
to state statute, which provides an initial hearing need not be held when a parolee
has been charged in any court with a violation of the law.  See, Mont. Code Ann. §
46-23-1924(1)(b).  Thus, by virtue of the Park County charges, the Montana
Supreme Court concluded not only was Griebel not entitled to an on-site hearing,
but also that probable cause to initiate the revocation proceedings existed.  Under
*Morrissey*, the State of Montana is free to implement its own procedures and those
procedures can still satisfy due process.  *Morrissey*, 408 U.S. at 481.  Griebel's due
process rights under *Morrissey* were not violated.  Or, put another way, Griebel has
not demonstrated the Montana Supreme Court's decision denying his claim was
contrary to or involved an unreasonable application of *Morrissey*.  Accordingly, this
Court must afford deference under 28 U.S.C. § 2254(d).  The claim will be denied.

**B. Length of Sentence**

Griebel argues that the revocation sentence he received is excessive because it is twice as long as that which he received for the underlying Park County misdemeanors.  But Griebel makes a false equivalency.  The revocation of Griebel's parole was not punishment for the new misdemeanor offenses, rather his conduct in committing the new offenses triggered the execution of the conditions of his original felony sentence.  See e.g., *U.S. v. Gavilanes-Ocaranza*, 772 F. 3d 624, 627 (9th Cir. 2014).

Additionally, matters relating to state sentencing are generally not cognizable under federal habeas review.  *Miller v. Vasquez*, 868 F. 2d 1116, 1118-19 (9th Cir. 1989).  A mere error by a state court in the interpretation or application of its own state's sentencing laws, without more, is not a cognizable ground for relief in a federal habeas corpus proceeding.  *Hendricks v. Zenon*, 993 F. 2d 664, 674 (9th Cir. 1993).  Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not justify federal habeas relief."  *Christian v. Rhode*, 41 F. 3d 461, 469 (9th Cir. 1994).  "A habeas petitioner must show that an alleged state sentencing error was 'so arbitrary or capricious as to constitute an independent due process' violation."  *Richmond v. Lewis*, 506 U.S. 40. 50 (1992) (citation omitted).

Here, Griebel's claim concerns the length of the state sentence imposed

upon revocation and does not implicate a federal constitutional right. While Griebel may disagree with the length of the sentence, he has not demonstrated that the sentence itself is unlawful. Further, Griebel cannot convert this state law issue into one of federal import merely by invoking the specter of a due process violation. See, *Langford v. Day*, 110 F. 3d 1380, 1389 (9th Cir. 1996), cert. denied, 522 U.S. 881 (1997). Griebel's claim is not cognizable and will be denied.

### C. Failure to Give Deference to Administrative Rules

Griebel believes the Montana Supreme Court erred in denying his habeas petition when it relied upon MCA § 46-23-1024(1)(b), rather than the administrative rules, in determining his new misdemeanor charges negated the need for a preliminary hearing. A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding upon the state courts and is not available for alleged errors in the interpretation and application of state law. See, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "[E]rrors of state law do not concern us unless they rise to the level of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989). Because state courts are the ultimate expositors of state law, the federal courts are bound by their constructions and limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. See, *Bonin v. Calderon*, 59 F. 3d 815, 841 (9th Cir. 1995).

11

To the extent that Griebel asks this Court to interpret and apply state law to correct a perceived wrong, this is not a cognizable ground for relief in a federal habeas corpus proceeding. *Mendez v. Small*, 298 F. 3d 1154, 1158 (9th Cir. 2002)("[a] state court has the last word on interpretation of state law"); *Estelle v. McGuire,* 502 U.S. 62, 67-68 ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Bonin v. Calderon*, 59 F. 3d 815, 841 (9th Cir. 1995) (violation of a "state law right does not warrant habeas corpus relief"); *Lewis v. Jeffers*, 497 U.S. 764, 789 (1990) ("Federal habeas corpus relief does not lie for errors of state law"); *Peltier v. Wright*, 15 F. 3d 860, 861-2 (9th Cir. 1994) (generally federal habeas corpus relief unavailable for errors of state law). While Griebel may believe the Montana Supreme Court applied the incorrect state law to his case, such belief does not create a viable federal constitutional claim. The state's highest court is the final authority on the law of that state. *Sandstrom v. Montana,* 442 U.S. 510, 516-17 (1979). This claim is not cognizable and will also be denied.

**D. Fifth Amendment Violation**

Griebel asserts that his Miranda rights were violated during his December 2020 appearance before the Board for his parole revocation hearing. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Court formulated a warning that must be given to suspects before they can be subjected to custodial interrogation. While Griebel

was certainly in custody during his parole revocation hearing, he was not a suspect of a crime who was being interrogated. *Miranda* is inapplicable.

But Griebel also makes a separate reference to a violation of his Fifth Amendment right against self-incrimination.  The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST., amend. V. "[T]his prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (internal quotations omitted); *see also Estelle v. Smith*, 451 U.S. 454, 462-63 (1981).

From the facts presented in his petition, it appears Griebel was only required to enter an admission or denial to the alleged parole violations, he does not state he was required to provide any other statements. In order to establish a Fifth Amendment violation outside the context of a criminal trial, Griebel must show that (1) the testimony desired by the government carries a real and appreciable danger of self-incrimination in a future criminal prosecution; and (2) that the testimony was compelled, i.e., the penalties suffered are sufficiently coercive and not hypothetical.  *United States v. Antelope*, 395 F. 3d 1128, 1134-39 (9th Cir.

2005), (*citing Minor v. United States*, 396 U.S. 87, 98 (1969) and *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977)).  Griebel cannot make the requisite showing under either prong.  He does not explain what testimony, if any, he provided at his hearing.  Nor does he allege such testimony was incriminating or that he was compelled to provide it.  Further, there is no indication that Griebel faces future criminal prosecution as a result of his appearance before the Board, or that the State of Montana sought to punish him for allegedly exercising his right to remain silent.  In short, Griebel has not established a Fifth Amendment violation; this claim will also be denied.

## V.   Injunctive Relief

Griebel asks this Court to issue a permanent injunction, pursuant to *Morrisey*, to protect the Fourteenth Amendment Due Process rights of future parolees.  See, (Doc. 1 at 7, ⁋ 17.)  But Griebel lacks standing to seek injunctive relief.  To have standing, the threat of injury must be real and immediate, not hypothetical or based on conjecture.  *O'Shea v. Littleton*, 414 U.S. 488 (1974); *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  As set forth above, Griebel's *Morrisey* claim lacks merit.  Moreover, his argument that others may be wrongfully denied a preliminary hearing is hypothetical and based upon Griebel's conjuncture.  Because Griebel lacks standing, this Court lacks jurisdiction to entertain the request for injunctive relief.

14

## VI.  Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules governing § 2254 Proceedings.  A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Griebel has failed to make a substantial showing of a denial of a federal constitutional right.  Griebel's *Morrisey* claim does not survive deferential review under AEDPA.  Griebel's remaining claims are wholly lacking in merit.  Accordingly, jurists would find no basis to encourage further proceedings.  A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. Griebel's motion for leave to proceed in forma pauperis (Doc. 6) is GRANTED.  The Clerk of Court shall waive payment of the filing fee.

2. Griebel's request for injunctive relief is DENIED.

3. Griebel's Petition (Doc. 1) is DENIED.

4. The Clerk of Court is directed to enter judgment in favor of

Respondents and against Petitioner.

5. A certificate of appealability is DENIED.


    DATED this 12th day of August, 2021.


_____ *10:40 am*
Donald W. Molloy
United States District Court Judge